# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JERRY A. SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:07CV00030 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*P. Heith Reynolds, Wolfe, Williams & Rutherford, Norton, Virginia, for Plaintiff; Taryn Jasner, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Jerry A. Smith filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383(f) (West 2003 and Supp. 2008). Jurisdiction of this court exists pursuant to §§ 405(g) and 1383(c)(3).

My review under the Act is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, the court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The plaintiff applied for benefits on August 26, 2004 (R. at 56-59), alleging disability beginning on August 9, 2004. The plaintiff claimed he was disabled by reason of a right rotator cuff tear, right elbow pain, left shoulder pain, low back pain, vision problems, and allergies. (R. at 68-73.) His claim was denied initially on October 22, 2004 (R. at 27-29), and upon reconsideration on February 9, 2005. (R. at 35-37, 196-98.)

The plaintiff filed a request for a hearing before an administrative law judge ("ALJ") on February 14, 2005. (R. at 38-39.) A hearing was held on November 22, 2005. (R. at 224-67.) The plaintiff, who was present and represented by counsel, testified at the hearing. (R. at 229-53.) Earl Grey Broughton, a vocational expert, was also present and testified. (R at 253-66.) By decision dated March 21, 2006, the ALJ found that the plaintiff was not disabled within the meaning of the Act. (R. at

17-24.) Although the ALJ found the plaintiff suffered from a combination of severe impairments of "a right rotator cuff tear, right lateral epicondylitis with a history of surgery with residual elbow pain, and multi-level disc bulging of the lumbosacral spine with subjective complaints of low back pain," he found the plaintiff retained the residual functional capacity to perform light unskilled work. (R. at 19-20.)

The plaintiff next filed a request for review with the Social Security Administration's Appeals Council ("Appeals Council") on March 29, 2006. (R. at 14.) The Appeals Council denied review on April 25, 2007 (R. at 6-8) and the ALJ's opinion constitutes the final decision of the Commissioner. The plaintiff has filed a complaint with this court objecting to the Commissioner's final decision.

Both parties have filed motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

The following facts are contained in the summary judgment record. Jerry Allen Smith was born on January 3, 1953. (R. at 60.) He was fifty-three years old at the time the ALJ issued his opinion, which is defined as a person closely approaching advanced age. 20 C.F.R. §§ 404.1563(d), 416.963(d). The plaintiff did not complete high school, nor did he earn a G.E.D. (R. at 231.) He was in a "slow learning class"

from third to seventh grade and still has difficulty reading. (R. at 248.) The plaintiff has most recently worked as a machine operator at Sam Moore Furniture, earning $14.00 per hour. (R. at 98-99.)

The plaintiff complains of allergies, vision problems, low back pain, right shoulder and elbow pain, and left shoulder pain. The ALJ found he was severely impaired by a combination of "a right rotator cuff tear, right lateral epicondylitis with a history of surgery with residual elbow pain, and multi-level disc bulging of the lumbosacral spine with subjective complaints of low back pain." (R. at 19.) The ALJ further concluded that the plaintiff's vision problems had no more than a minimal effect on the plaintiff's ability to function. (R. at 20.) He made no findings with regard to the plaintiff's allergies or left shoulder.

The plaintiff saw Drew E. Kiernan, M.D., for his complaints of right shoulder elbow pain from January 3, 2003 until July 1, 2004. (R. at 137-47.) On January 3, 2003, Dr. Kiernan noted that the plaintiff still had pain in his right elbow, after two procedures for lateral epicondylitis. (R. at 147.) At that time, Dr. Kiernan told the plaintiff that he had reached maximum improvement in his elbow and that further related symptoms would have to be tolerated by the plaintiff. (*Id.*) Dr. Kiernan opined that there was "permanent partial impairment of 2%." (*Id.*) The plaintiff also

- 4 -

Case 2:07-cv-00030-JPJ-PMS   Document 18   Filed 07/28/08   Page 4 of 12   Pageid#: 60

complained of right shoulder pain but said that he would visit his primary care physician for evaluation. (*Id.*)

On August 20, 2003, the plaintiff returned to Dr. Kiernan for reevaluation of his right shoulder. (R. at 146.) He denied neck pain and stated that his right elbow was unchanged from his prior visit. (*Id.*) After examining the plaintiff, Dr. Kiernan opined that the right shoulder pain was either secondary to impingement syndrome or caused by a rotator cuff tear. (*Id.*) Dr. Kiernan recommended physical therapy, but the plaintiff decided to seek a second opinion. (*Id.*)

The plaintiff returned to Dr. Kiernan on March 17, 2004, still complaining of right shoulder pain. (R. at 144.) The plaintiff had not attended physical therapy but had performed some exercises at home. The examination did not produce a diagnosis, and the plaintiff elected to try to find work which was less demanding on his upper extremities. (*Id.*) The plaintiff, however, returned to Dr. Kiernan a week later. (R. at 143.) He was experiencing right shoulder and elbow pain. Dr. Kiernan noted that the elbow pain had changed and was accompanied by "disability with regard to [his] ability to use the [right] limb." (R. at 143.) Again, Dr, Kiernan opined that the right shoulder pain was associated with an impingement syndrome. Dr. Kiernan told the plaintiff that he should find alternative employment in order to alleviate his right shoulder pain. (*Id.*)

The plaintiff returned to Dr. Kiernan on June 14, 2004, complaining of a significant increase in his right shoulder pain since his last visit. (R. at 142.) Dr. Kiernan suspected a rotator cuff tear, so he ordered an MRI arthrogram. (*Id.*) The arthrogram revealed a "through and through tear of the rotator cuff tendon." (R. at 140-41.) On July 1, 2004, Dr. Kiernan discussed the arthrogram with the plaintiff and they decided to proceed with a "right shoulder arthroscopy, subacromial decompression, and open rotator cuff repair." (R. at 139.)

The records indicate that the plaintiff did not follow through with the surgery. On March 14, 2005, the plaintiff returned to Dr. Kiernan with complaints of right shoulder and elbow pain. (R. at 190-92.) Dr. Kiernan reiterated that his right shoulder pain would be "greatly lessened" by surgery. (R. at 192.)

On February 3, 2005, Dr. Kiernan completed a Medical Assessment of Ability to do Work-Related Physical Activities (Physical). (R. at 174-75.) In that assessment, Dr. Kiernan noted that the plaintiff's was limited in several areas by his right rotator cuff tear. (*Id.*) Specifically, he opined that the plaintiff could not lift more than ten pounds occasionally; that he could never climb; that he could only occasionally crawl; and that his ability to reach, push, and pull were affected. (*Id.*) In support of each limitation, Dr. Kiernan noted that the plaintiff suffered from pain associated with a right rotator cuff tear. (*Id.*)

The plaintiff was also evaluated by state agency physicians David C. Williams, M.D., and Robert R. Chaplin, Jr., M.D. (R. at 176-82.) They opined that the plaintiff could lift twenty pounds occasionally and ten pounds frequently. (R. at 177.) They further noted he was limited in his ability to push and pull in his upper extremities and limited with regard to gross manipulation by his right side. (R. at 178.) Drs. Williams and Chaplin found the plaintiff was limited to six hours, each, of standing/walking and sitting in an eight-hour work day. Finally, they limited him to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (*Id.*) They noted his primary diagnosis as right rotator cuff tear with a secondary diagnosis of low back disorder. (R. at 176.)

The ALJ adopted the findings of Drs. Kiernan, Williams, and Chaplin, finding them to be "fully consistent." (R. at 20.) He concluded that the plaintiff had the residual functional capacity to perform light work.[1] (*Id.*)

---

[1] The plaintiff is not contesting the ALJ's factual determinations with regard to the plaintiff's low back pain, vision problems, allergies, and left shoulder. Consequently, I have not detailed the records pertaining to those ailments in this opinion. I have, however, reviewed the record, and find that the ALJ's opinions with regard to those issues are supported by substantial evidence.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The plaintiff must show that his "physical . . . impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C.A. § 423(c)(2)(A).

The ALJ applies a five-step sequential process in evaluating a claim for DIB. The ALJ must decide whether the plaintiff (1) has worked during his alleged period of disability; (2) has a severe impairment or combination of impairments; (3) has an impairment or combination of impairments that meets or equals the severity of a listed impairment; (4) can resume past relevant work; and, if not, (5) can perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2008). If the ALJ finds that the complaint has failed to meet any step of the process, then the inquiry immediately ceases. *See Id.; Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

My review is limited to whether there was substantial evidence to support the ALJ's final decision and whether the ALJ applied the correct legal standard. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If the

- 8 -

ALJ's decision is supported by substantial evidence, then I must affirm the final decision. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642. The ALJ properly resolves evidentiary conflicts, including inconsistencies in the evidence. This court may not substitute its judgment for that of the ALJ, so long as substantial evidence supports the ALJ's decision. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff argues that the ALJ's conclusion was not supported by substantial evidence because the ALJ disregarded the opinion of Dr. Kiernan, plaintiff's treating specialist, without explaining why. The plaintiff further contends that if the ALJ had credited Dr. Kiernan's opinions as to the plaintiff's limitations, then the ALJ would have found the plaintiff to be disabled under the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.10 (2008) ("Rule 201.10"). The Commissioner maintains that the ALJ fully credited Dr. Kiernan's opinion and issued a decision which conformed with that opinion.

Rule 201.10 directs a finding of disability for an individual who (1) is closely approaching advanced age; (2) has a limited education; (3) can perform only

- 9 -

sedentary work; and (4) has unskilled prior work or no transferable skills. 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.10. The ALJ found that the plaintiff was an individual closely approaching advanced age, that he had a marginal education, and that his prior work skills were not transferable. (R. at 22.) However, he found that the plaintiff retained the residual functional capacity to perform light work,[2] not merely sedentary work. (R. at 20.) It is this determination about which the parties disagree.

In his opinion, the ALJ explained that he based his residual functional capacity finding on the report of Drs. Williams and Chaplin and that he "gave great weight" to their assessment "because it was fully consistent with the conclusions of treating orthopedist Dr. Kiernan." (R. at 20.) The plaintiff argues that Drs. Williams and Chaplin did not reach the same conclusion as Dr. Kiernan. In support, he points to the Medical Assessment of Ability to Do Work-Related Activities that Dr. Kiernan completed. In that report, Dr. Kiernan opined that the plaintiff could not lift more than ten pounds occasionally and he made no finding with regard to how much weight the plaintiff could frequently lift or carry. (R. at 174.)

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b) (2008).

- 10 -

If this were the sum total of Dr. Kiernan's findings, the court might be forced to conclude that Dr. Kiernan disagreed with Drs. Williams and Chaplin as to how much weight the plaintiff could lift and carry. However, Dr. Kiernan also noted that the limitation was supported by his assessment that the plaintiff had a "right rotator cuff tear." (R. at 174.) A logical inference to be drawn from this notation is that the plaintiff was limited to lifting and carrying ten pounds occasionally, with his right upper extremity, and that Dr. Kiernan made no finding with regard to how much the plaintiff could lift or carry using both upper extremities. Drs. Williams and Chaplin opined that the plaintiff could lift twenty pounds occasionally and ten pounds frequently, without any notation limiting such weight to his right upper extremity. (R. at 177.)

It was reasonable for the ALJ to conclude that the opinions of the treating specialist and the state agency physicians were consistent. Given that Dr. Kiernan had limited the plaintiff to lifting or carrying ten pounds occasionally with his right upper extremity, it made sense that the plaintiff could lift more weight using both upper extremities, as opined by Drs. Williams and Chaplin.

The plaintiff's interpretation—that both the treating physician's report and the state agency physicians' report referred to the total weight the plaintiff could lift or carry using both upper extremities—is also plausible. And, if that interpretation had

been adopted by the ALJ, this court would find substantial evidence in the record to support that decision. Simply put, Dr. Kiernan's report is subject to either interpretation, and this court is not tasked with selecting the best one. *See Hays*, 907 F.2d at 1456.

Because the ALJ's interpretation of Dr. Kiernan's report was supported by substantial evidence, then his determination that the plaintiff retained the residual functional capacity to perform light work, was also supported by substantial evidence. Consequently, Rule 201.10 does not apply, and there is no presumption of disability.

The plaintiff has not raised any other objection to the ALJ's decision.

IV

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted, and the plaintiff's motion for summary judgment will be denied.

An appropriate final judgment will be entered.

DATED: July 28, 2008

/s/ JAMES P. JONES
Chief United States District Judge